### DRUGGIST SPECIALTIES CO., Inc., v. BLISS et al. *

#### No. 8139.

District Court, E. D. Pennsylvania.

June 18, 1934.

David S. Malis, of Philadelphia, Pa., for plaintiff.

B. M. Ilderton and Edward C. Dougherty, both of Philadelphia, Pa., for defendants District Supervisor and Commissioner of Industrial Alcohol.

*Decree reversed, Helvering v. Druggists Specialties Co., — F.(2d) —.

**DICKINSON, District Judge.**

This bill should be sustained.

#### Discussion.

The case is a revocation of a permit case. We shall treat it, however, as if it were the refusal of an original permit. If an original permit could not be refused, a fortiori a revocation would be unjustified. The permittee has held a permit for thirteen years. It is accused of having, when the National Prohibition Act (27 USCA) was in force, been a party to law violations by selling to known illicit dealers in alcoholic liquors potable alcohol. Guilt is vehemently denied. We have not inquired into the question of guilt, as our ruling is based on wholly different grounds. When the National Prohibition Act was in force, the permit authorities were given what was the practical equivalent of a discretionary power to grant or withhold permits. The discretion was not an absolute one, but it was none the less real. When they certified that the applicant for a permit was a prospective law violator and there was a fact basis for this belief, the courts supported the authorities in the refusal of a permit. We will assume, without inquiry, the defendants had this justification in the instant case. The law, however, upon the provisions of which such refusals were based, has been repealed. The question then is, Do the permit authorities now have the lawful power to discriminate among applicants, granting or refusing permits in their discretion? It is urged they do in cases like the one before us because the revenue provisions of the law are still in force and they govern the instant case. Potable alcohol is subject to a tax; denatured alcohol for use in the arts is not taxed. Regulation of the production of the latter is in consequence important as a revenue measure. Such laws antedated the prohibition laws. The question then is narrowed to that of whether in pre-prohibition days manufacturers and dealers in nonpotable alcoholic liquors could be selected by the revenue officers. All dealers could without doubt be subjected to an excise tax. Without its payment they could not conduct business. Regulations might be imposed to facilitate the collection of the tax and prevent tax evasion. Payment of the tax was evidenced by a receipt. This came to be known as a "Revenue License" because essential to the conduct of the business. It was, however, in real truth a tax receipt. Was it within the power of the revenue officers to issue such receipts to those whom

918

they deemed worthy and refuse them to the unworthy? Would even a well-founded belief that recipient would use the receipt as an aid to law violations justify a refusal to issue it? In practice at least this was never done. No one was either too good or too bad to be a taxpayer. The practice was based upon the universal belief that there was no lawful power to discriminate among dealers. We share that conviction. No one can be refused the right to manufacture or deal in a denatured alcoholic product because of a belief, well or ill founded, that he will under cover of his permit put out a potable beverage liquor or one which can easily be made such. He can, of course, be restricted to a product made according to a prescribed formula, but the truth, even if it be done, that he is justly suspected of an intention to sell to those who by distillation or otherwise will use the product to evade the revenue laws, will not justify the refusal of a permit.

For this reason we have not inquired whether the complaints of the conduct of this permittee are well founded or not. Upon this fact we make no finding.

We see no need to pass upon the request that the court of its own motion strike out of the bill paragraphs 11 to 23, both inclusive. We are, however, of the opinion expressed by counsel for defendants that these averments have no proper place in the bill. They are nothing more nor less than an effort to impress us with the good faith of the permittee and its freedom from all bad intentions.

■ It may be well to make clear our entire agreement with the proposition that all the revenue provisions of the law remain in full force and effect notwithstanding the repeal of the Eighteenth Amendment. The National Prohibition Law, however, went far beyond the revenue provisions in giving the power to control the traffic in alcoholic liquors. In some of its features it facilitated the enforcement of the revenue laws. In so far, however, as it prohibited the traffic, it abolished the tax revenue derived from this source. Under the National Prohibition Law, as we have said, as traffic might be absolutely prohibited, so it might be restricted through a permit or licensing system to a limited favored few. Under that law, as we have further said, the permit authorities might practically restrict the traffic to a selected few by exercising a discretion in issuing permits. When that law was repealed,

however, all powers exercised under it went with it.

All we rule is that, however desirable such a power may be, the permit authorities are now without the power to grant or refuse permits in their discretion. As they have not this absolute power, so they do not have the qualified power to exercise such discretion when its wisdom has support in the facts. It was always held that they did not have this absolute or arbitrary discretion. Now they do not have the qualified discretion formerly allowed them.

We have been favored with a very full and impressive argument in support of the power to refuse because the power to regulate remains. The power to tax, and for this purpose to regulate, does remain, but the power to prohibit has been withdrawn. The latter power could not be used to aid regulation but none the less a power to regulate is not a power to prohibit. Every permit or licensing system is based on the power to prohibit because it is pro tanto prohibition.

A decree sustaining the bill and reversing the order of revocation may be submitted.